IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:23-cv-00162-DDD-SBP

GLADIS CASTAÑEDA, on her own behalf and on behalf of all others similarly situated,

    Plaintiff,

v.

LOS DOS POTRILLOS LLC;
LOS DOS POTRILLOS HIGHLANDS RANCH LLC
LOS DOS POTRILLOS LITTLETON LLC;
LOS DOS POTRILLOS PARKER LLC;
LOS DOS POTRILLOS COCINA Y CANTINA – NORTHGLENN LLC;
LOS DOS POTRILLOS COCINA Y CANTINA – SOUTHLANDS LLC;
JOSE LUIS RAMIREZ;
LUIS RAMIREZ; and
DANIEL RAMIREZ,

    Defendants.

## ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

The plaintiffs are restaurant employees who allege that the defendant restaurants and restaurant owners did not pay required wages. The plaintiffs assert that the defendants' practices violated several Colorado statutory and common laws and the federal Fair Labor Standards Act. They bring a class action under Federal Rule of Civil Procedure 23 as to their state-law claims and a collective action under the FLSA. The parties have reached a settlement agreement, and they move for final approval of that settlement. Doc. 69. For the following reasons, the motion is granted, and the settlement is approved.

## BACKGROUND

The defendant restaurant owners operate a number of Mexican restaurants in the Denver metropolitan area. The plaintiffs allege that the defendants failed to pay the required minimum wage to front-of-house employees (both by taking tip credits and by paying the sub-minimum wage for non-tipped work); failed to inform customers of the restaurants' tip-pooling policy as required by Colorado law; failed to pay proper overtime rates; and failed to provide employees with required rest periods. In addition to those class-wide allegations, the named plaintiff, Gladis Castañeda, alleges that the defendants retaliated against her and unlawfully terminated her after she informed customers of the tip-pooling policy.

Ms. Castañeda filed suit on January 19, 2023 on behalf of herself and similarly situated employees. Doc. 1. The plaintiffs assert that the defendants' practices violated: (1) the FLSA, 29 U.S.C. §§ 201-219; (2) the Colorado Minimum Wage Act, Colo. Rev. Stat. §§ 8-6-101 to 8-6-120, as implemented by the Colorado Overtime and Minimum Pay Standards Order, 7 Colo. Code Regs. §§ 1103-1:1 to 1103-1:8; (3) the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101 to 8-4-127; (4) the Colorado civil-theft statute, Colo. Rev. Stat. 18-4-101; and (5) Colorado common law prohibiting unjust enrichment. Ms. Castañeda also asserts individual claims alleging unlawful retaliation under the FLSA, Minimum Wage Act, and Wage Claim Act, as well as a claim for unlawful termination under Colorado common law.

After the exchange of discovery, the parties engaged in mediation, and following approximately five months of negotiation, they reached a

settlement agreement. *See* Docs. 33, 36, 39, 42, 44, 46, 48, 52. That settlement agreement provides for a gross settlement fund of $3,750,000, to be divided as follows:

- $230,500 to Ms. Castañeda for her individual retaliation claims;
- $15,000 to Ms. Castañeda as an award for her service as named plaintiff;
- $1,249,875 (*i.e.*, 1/3 of the gross fund) to class counsel for attorney fees and costs;
- $50,000 for the costs of administering the settlement; and
- The remaining net class fund to be allocated between (a) the claims for failure to pay overtime wages, (b) FLSA liquidated damages and Colorado statutory penalties, and (c) the other wage and civil-theft claims, and distributed to all participating class members on a pro rata basis based on days worked and job position held during the relevant time periods.

*See* Doc. 57 at 4-6; Doc. 57-1; Doc. 69-1 ¶ 17. According to the class administrator, the average pre-tax settlement payment to each individual class member is estimated to be $1,565.16, the highest payment is estimated to be $25,676.82, and the lowest payment is estimated to be $65.00. Doc. 69-1 ¶ 18.

On October 18 2024, Judge Raymond P. Moore preliminarily certified a Rule 23 class defined as "All Los Dos Potrillos hourly employees from January 19, 2017 through April 8, 2024," and conditionally certified an FLSA collective defined as "All Los Dos Potrillos hourly employees from January 19, 2020 through April 8, 2024." Doc. 59 at 2. The starting dates of the Rule 23 class and the FLSA collective differ because Colorado law is not settled as to which statute of limitations applies to the plaintiffs' state-law claims; this issue is the subject of an appeal currently pending before the Colorado Supreme Court. Doc. 57 at 13. Judge

Moore also preliminarily approved the parties' settlement agreement, Doc. 59, and granted the plaintiffs' motion for an award of $1,249,875 in attorney fees and costs to class counsel, finding that the award sought is reasonable, Doc. 60. The case was then reassigned to me. Doc. 61.

Notice of the proposed settlement was distributed to the potential class members. Doc. 69-1 ¶¶ 2-13, Ex. A, Ex. B. The Rule 23 class had 1,350 potential members, of which only three have opted out. *Id.* ¶¶ 6, 16; Doc. 70-1 ¶¶ 5, 9. The FLSA collective had 937 potential members, of which ninety-nine have opted in. Doc. 69-1 ¶¶ 6, 14; Doc. 70-1 ¶ 9. The parties have not received any objections to the proposed settlement, Doc. 69-1 ¶ 15; Doc. 70-1 ¶ 7, and no objections have been filed with the Court. On April 4, 2025, the parties moved for final approval of the Rule 23 class, the FLSA collective, and the settlement. Doc. 69. On April 22, 2025, a final fairness hearing was held. Doc. 71. No objectors appeared at the hearing.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 216(b), and 28 U.S.C. § 1367.

## DISCUSSION

This is a "hybrid" class action, one in a "relatively recent trend" of lawsuits that "have troubled district courts across the country because of the inherent conflict between the opt-in requirement of FLSA collective actions and the opt-out provisions of Rule 23(b)(3) class actions." *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 123 (D. Colo. 2016). An FLSA collective action requires plaintiffs to opt in to be bound to an approved settlement, while members of a Rule 23 class who do not opt out will be bound to an approved settlement as to state-law wage claims. *See id.* at 123-24. Under applicable res judicata principles, potential class members who take no action—*i.e.*, they do not opt out of the Rule 23 class but do not opt in to the FLSA collective—will be bound by

the settlement reached in the hybrid action. *Id.* at 132. For that reason, courts have reached differing conclusions as to whether state-law class claims under Rule 23 may proceed in the same action as collective FLSA claims. But "the most recent cases arising in this District tend toward approving such arrangements." *Id.* at 125; *accord Hunter v. CC Gaming, LLC* (*Hunter I*), No. 19-cv-01979-DDD-KLM, 2020 WL 13444205, at *2 (D. Colo. May 12, 2020); *Stanley v. Panorama Orthopedics & Spine Ctr., P.C.* (*Stanley I*), No. 1:22-cv-01176-RM-SBP, 2024 WL 1743497, at *2 (D. Colo. Apr. 23, 2024). The Tenth Circuit has not addressed this issue, but other courts of appeals have allowed hybrid Rule 23/FLSA actions. *See Calderone v. Scott*, 838 F.3d 1101, 1103 (11th Cir. 2016) ("[W]e conclude that an FLSA collective action and a Rule 23(b)(3) state-law class action may be maintained in the same proceeding. We join the D.C., Second, Third, Seventh, and Ninth Circuits in so holding." (collecting cases)). I agree with this trend and find no reason to take a different approach in this case. As in *Hunter*, "[t]he FLSA claims are predicated on the same facts as the state law claims," and "[t]he putative class members are identical for the FLSA claims and the state claims," but for the starting dates of the relevant employment period. 2020 WL 13444205, at *2. I will therefore allow a hybrid class settlement in this case.

The review and approval of a class-action settlement proceeds in three steps: (1) preliminary approval of the proposed settlement after submission of a written motion including the proposed settlement and proposed class notice; (2) dissemination of notice of the settlement to all affected class members; and (3) a final fairness hearing at which class members may be heard regarding the settlement and evidence and argument regarding the fairness, adequacy, and reasonableness of the settlement may be presented. *Id.* at *3 (citing *Pliego*, 313 F.R.D. at 123; *Manual for Complex Litigation (Fourth)* §§ 21.632-34 (2004)). These

steps have been completed, and I now certify the Rule 23 class and FLSA collective for settlement purposes and finally approve the proposed settlement agreement.

## I. Final Certification of Rule 23 Class

Under Rule 23, one or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of those of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). If those requirements are met, a court may certify a class if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis" that the requirements of Rule 23 are met. *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 685 (D. Colo. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)).

### A. Numerosity of Class Members

"A certifiable class must be so numerous that joinder is impracticable." *Helmer v. Goodyear Tire & Rubber Co.*, No. 12-cv-00685-RBJ-MEH, 2014 WL 1133299, at *3 (D. Colo. Mar. 21, 2014) (citing *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006)). "Numerosity also requires that the members of the class be ascertainable with the use of objective criteria." *Id.* The potential class members here were ascertained from payroll data produced by the defendants. Doc. 57 at 2-3, 4; Doc. 57-1

at 5; Doc. 69-1 ¶¶ 5-6. As noted above, the final class has 1,347 members. Joinder of all 1,347 plaintiffs would be impracticable, and I find that the numerosity requirement is satisfied.

### B. Commonality of Legal and Factual Questions

"A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-95 (10th Cir. 2010). Class members must "possess the same interest and suffer the same injury." *Trevizo*, 455 F.3d at 1163 (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982)). Commonality still exists if class members' claims differ factually but challenge the application of a commonly applied policy. *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999). Here, the common questions at the core of each of the class members' claims are whether the defendants paid required minimum wages for tipped and non-tipped work, properly disclosed their tip-pooling policy to customers, paid required overtime wages, and allowed employees required rest breaks. The plaintiffs allege that the class members were all subject to the same policies of required tip sharing, payment of less than the required rate for overtime hours, and denial of rest periods. While there may be factual differences for each class member as to job position and number of hours worked, each class member's claims turn on the same legal analysis regarding whether these policies violated applicable wage laws. The class therefore satisfies the commonality requirement.

### C. Typicality of Representative Plaintiff's Claims

"A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 WL 2149602, at *3 (D. Colo. June 1, 2011) (citing *Johnston v. HBO Film Mgmt., Inc.*, 265

F.3d 178, 184 (3d Cir. 2001)). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). Here, like all members of the class, Ms. Castañeda alleges that she was not paid required wages and was denied required breaks, and she challenges the same policies and conduct of the defendants that would be challenged by the class. The typicality requirement is satisfied.

### D. Adequacy of Representation

The adequate representation requirement concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class. *Maez v. Springs Auto. Grp., LLC*, 268 F.R.D. 391, 396-97 (D. Colo. 2010) (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)). Resolution of two questions determines adequacy: (1) whether the named plaintiff and her counsel have any conflicts of interest with other class members, and (2) whether the named plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002); *see also* Fed. R. Civ. P. 23(g)(1)(A)-(B), (4). "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998).

No conflicts of interest are apparent. And upon review of the proposed settlement, I find that the action has been prosecuted vigorously by experienced class counsel, who took this case on contingency, and by Ms. Castañeda, who, as a former server, had the same job position and

responsibilities as a significant portion of the class and the same interest in vindicating her wage rights as the other class members. The over $2 million net class fund will be distributed to the 1,347 class members on a proportionate basis based on days worked and job position held during the relevant time period. The fairness and reasonableness of the proposed settlement affirms the conclusion that the action was prosecuted adequately and vigorously on behalf of the class.

### E. Predominance of Common Class Questions and Superiority of Class-Action Method of Adjudication

Matters pertinent to the predominance and superiority inquiry include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *Pliego*, 313 F.R.D. at 127. Here the class members were subject to the same tip-sharing, wage, and rest-break practices during the same time period. Whether those practices violated state wage laws, and thus whether the defendants are liable to members of the class for damages, is the dominant inquiry for all the class members' claims. To be sure, the amount of damages will vary among class members because not all employees had the same job position, worked the same number of hours, or remained employed for the same amount of time. But those differences bear only on the amount of damages, and the

Case No. 1:23-cv-00162-DDD-SBP   Document 72   filed 04/25/25   USDC Colorado
pg 10 of 18

parties have worked out a formula for allocating the correct amount of damages to each class member. The predominance requirement is satisfied.

And a class action is superior to other available methods of adjudicating the predominant issues because (a) the absent class members to date have shown no interest in controlling the prosecution of separate actions, (b) no other litigation regarding this controversy has been commenced, (c) it is desirable to concentrate the relatively small claims of low-wage workers, and (d) a class action is superior to individual suits in terms of efficiency for the parties and the Court. *See Pliego*, 313 F.R.D. at 127. "Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued." *Id.* (collecting cases).

All requirements are satisfied, and I therefore finally certify a Rule 23 settlement class defined as "All Los Dos Potrillos hourly employees from January 19, 2017 through April 8, 2024."

## II. Final Certification of FLSA Collective

The FLSA permits collective actions where the allegedly aggrieved employees are "similarly situated." 29 U.S.C. § 216(b). Courts have adopted three alternative approaches for determining whether employees are similarly situated. *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). As relevant here, under the "ad hoc" approach, whether employees are similarly situated is judged in two stages: (1) a conditional "notice stage" determination, applying a fairly lenient standard; and (2) a more searching "second stage," applying a stricter standard. *Id.* at 1102-03, 1105. As discussed above, the notice stage has been completed. Judge Moore conditionally certified an FLSA collective, notice was distributed to the potential members, and ninety-nine members opted in.

At the second stage, courts consider several factors, including: (1) whether the individual plaintiffs have disparate factual and employment settings; (2) whether the various defenses available to the defendants appear to be individual to each plaintiff; and (3) fairness and procedural considerations.[1] *Id.* at 1103. These factors overlap significantly with those discussed above in connection with the Rule 23 class, and I find that the defendants' hourly employees are similarly situated under the FLSA for substantially the same reasons that Rule 23 class certification is appropriate. *See German v. Holtzman Enters., Inc.*, No. 19-cv-03540-PAB-STV, 2024 WL 809898, at *3 (D. Colo. Feb. 27, 2024) ("Where plaintiffs seek certification of both a Rule 23 class and a FLSA collective, courts have found that certification of an FLSA settlement collective is appropriate where the plaintiffs have satisfied the conditions required to certify a Rule 23 class because there is significant overlap between what is required . . . ." (citing *Shahlai v. Comcast Cable Commc'ns Mgmt., LLC*, No. 16-cv-2556-WJM-NRN, 2018 WL 3870129, at *6 (D. Colo. Aug. 15, 2018); *Hunter v. CC Gaming, LLC* (*Hunter II*), No. 19-cv-01979-DDD-KLM, 2020 WL 13444208, at *5 (D. Colo. Dec. 16, 2020))); *see also* Doc. 69 at 3-4.

I therefore finally certify an FLSA settlement collective defined as "All Los Dos Potrillos hourly employees from January 19, 2020 through April 8, 2024."

---

[1] *Thiessen* was an action under the Age Discrimination in Employment Act, which borrows the opt-in mechanism of the FLSA. 267 F.3d at 1102. A fourth factor identified in *Thiessen*, *id.* at 1103, is specific to ADEA claims and is not applicable in an FLSA action. *Wilson v. DFL Pizza, LLC*, No. 18-cv-00109-RM-MEH, 2019 WL 3002928, at *2 n.3 (D. Colo. July 10, 2019).

### III. Final Approval of Settlement

Under Rule 23, class-action claims may be settled only with court approval. Fed. R. Civ. P. 23(e). A court may approve a class-action settlement only after a hearing and on finding that the settlement is "fair, reasonable, and adequate," after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Settlement of an FLSA collective action also requires court approval. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)). A court must scrutinize a proposed settlement for fairness. *Id.* To approve an FLSA settlement, a court must find that it is a fair and reasonable resolution of a bona fide dispute. *Id.* at 1354-55. To be fair and reasonable, the settlement "must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1173 (D. Colo. 2018). Courts weigh a number of factors when assessing fairness, including: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or

collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *Id.* Courts also assess whether the proposed attorney fee award is reasonable. *Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014); *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *2 (D. Colo. May 11, 2018). The purpose and policy rationale of the FLSA is to protect employees with unequal bargaining power from substandard wages and excessive hours. *Baker*, 2014 WL 700096, at *1. In considering whether a proposed settlement undermines that purpose, courts look at (1) the presence of other similarly situated employees, (2) the likelihood that the plaintiff's circumstances will recur, and (3) whether the defendant has a history of non-compliance with the FLSA. *Herring v. Thunder Ridge Trucking & Filtration, Inc.*, No. 15-cv-00062-RM-KLM, 2016 WL 7868819, at *2 (D. Colo. May 24, 2016).

The Rule 23 and FLSA standards for deciding whether to approve a proposed settlement are analogous. *Thompson*, 2018 WL 2183988, at *1; *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *4 (D. Colo. Nov. 11, 2013); *see also Pliego*, 313 F.R.D. at 127-28. Courts typically apply the following factors when assessing the fairness of proposed settlements of both types of claims: (1) whether the proposed settlement was fairly and honestly negotiated, (2) whether serious questions of law and fact exist that place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the parties that the settlement is fair and reasonable. *Pliego*, 313 F.R.D. at 128 (citing *Rutter*, 314

F.3d at 1188); *accord Whittington*, 2013 WL 6022972, at *4. I will therefore evaluate the proposed settlement here under the combined standards applicable to Rule 23 and FLSA settlements. *See Pliego*, 313 F.R.D. at 128.

### A. Bona Fide Dispute

The mere existence of an adversarial lawsuit is not enough to satisfy the FLSA bona fide dispute requirement. *Davis*, 292 F. Supp. at 1172. To show that a bona fide dispute exists, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.* In this case, (1) the parties dispute whether the plaintiff employees are entitled to recover pooled tips and other wages; (2) the defendant employers own and operate a chain of Mexican restaurants, and the plaintiffs are servers and other hourly employees; (3) the defendants dispute that they failed to pay proper wage rates for all hours worked; (4) the plaintiffs allege the defendants did not pay required minimum wages for tipped and non-tipped work, did not disclose their tip-pooling policy to customers, did not pay required overtime wages, and did not allow required rest breaks; and (5) the parties engaged in extensive settlement discussions based on an in-depth review of the defendants' wage and hour data. I find that a bona fide dispute exists.

### B. Fair and Reasonable Settlement

*First*, I find that the proposed settlement was fairly and honestly negotiated at arm's length and was not the product of fraud or collusion. As described above, the parties reached an agreement after months of

negotiation facilitated by a mediator. Both sides were represented by competent counsel. The settlement negotiations took place after the exchange of discovery, including the defendants' production of pertinent wage and hour data, from which class counsel created a damages model to determine the value of each class member's claims. Class counsel has over eighteen years of experience representing employees in wage-law class actions and has litigated over 100 such cases in federal and state courts. Doc. 58-1 ¶¶ 5, 9. And as discussed above, Ms. Castañeda and class counsel have adequately and vigorously represented the class.

*Second*, I find that serious questions of state law exist that place the ultimate outcome of the litigation in doubt. As noted above, Colorado law is unsettled as to whether the plaintiffs are entitled to recover unpaid wages dating back two, three, or six years from the date suit was filed. Class counsel represented at the final fairness hearing that the plaintiffs' civil-theft claims are novel, and it is uncertain whether treble damages may be recovered on those claims. *See also* Doc. 57 at 13. The parties also note that whether a restaurant's failure to provide notice to customers of a tip-pooling policy requires return of the pooled tips to servers has not been addressed under Colorado law. *Id.* at 13-14. These issues would be contested at summary judgment and on appeal, and a final resolution would only occur after the parties incurred significantly more litigation expense through continued discovery, motions practice, and a potential trial.

*Third*, for similar reasons, I find that the value of an immediate recovery outweighs the mere possibility of future relief for the plaintiffs after protracted and expensive litigation, including the costs, risks, and delay of trial and appeal. This dispute presents significant risk for both sides. The contested statute of limitations and scope of recoverable damages make the immediate recovery provided by the settlement outweigh

the possibility of future relief for the plaintiffs. Settling now to avoid the risk of further litigating these issues is reasonable for both sides.

*Fourth* and finally, I agree with the judgment of the parties that the settlement is fair and reasonable. The proposed settlement furthers the purpose of the FLSA by providing relief to a number of similarly situated low-wage employees who individually would lack bargaining power. *See* Doc. 57 at 16-17. The net class fund of over $2 million provides adequate relief to the class members in relation to their potential recovery should the case proceed. The settlement treats class members equitably relative to each other with respect to the class and collective claims, with the exception of Ms. Castañeda's service award. And courts regularly give such awards both "to provide an incentive to act as a named plaintiff" and "to compensate named plaintiffs for the work they performed."[2] *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 464-68 (10th Cir. 2017). Ms. Castañeda took a risk in acting as the representative plaintiff when no other employees were willing to do so, Doc. 57 at 18, and class counsel represented at the final fairness

---

[2] The Eleventh Circuit cast doubt on the propriety of service awards in *Johnson v. NPAS Sols., LLC* (*Johnson I*), 975 F.3d 1244 (11th Cir. 2020). The Tenth Circuit has not squarely addressed the argument presented that case, *see Chieftain Royalty*, 888 F.3d at 466-67 (finding argument forfeited), but the other courts to have done so have rejected it. *See Scott v. Dart*, 99 F.4th 1076, 1084-88 (7th Cir. 2024) (declining to follow *Johnson I* and noting that First, Second, and Ninth circuits have also expressly rejected it (collecting cases)); *Johnson v. NPAS Sols., LLC* (*Johnson II*), 43 F.4th 1138, 1139 & n.2 (11th Cir. 2022) (Pryor, Wilson, Jordan & Rosenbaum, JJ., dissenting from denial of rehearing en banc) ("[S]ince *Johnson I* issued, every court outside this circuit to have considered it has declined to follow it." (collecting district-court cases)). And though the hybrid nature of this class action complicates the choice-of-law analysis, to the extent that Colorado applies, I predict the Colorado Supreme Court would allow service awards if they are reasonable. *See Hunter II*, 2020 WL 13444208, at *8 (citing *Chieftain Royalty*, 888 F.3d at 468).

hearing that she invested significant time and effort in the case and provided material assistance in bringing the case to a successful conclusion, *see also id.* I find the $15,000 award to be fair and reasonable in light of the risks assumed by Ms. Castañeda and to compensate her for the work she performed.[3] Class counsel's attorney fees and costs are also reasonable, as Judge Moore has found.[4] Doc. 60. And the proposed method of processing claims and distributing relief to the class members is fair and effective. At the final fairness hearing, class counsel represented that half of the $50,000 allocated to the costs of administering the settlement will be used to track down the class members, many of whom are transient, and ensure that they are located and receive and cash their checks.

In sum, I find the proposed settlement to be fair, reasonable, and adequate, and it is therefore approved.

---

[3]   *See German*, 2024 WL 809898, at *3 (approving $10,000 each to two named plaintiffs); *Stanley v. Panorama Orthopedics & Spine Ctr., P.C.* (*Stanley I*), No. 1:22-cv-01176-RM-SBP, 2024 WL 4546178, at *2 (D. Colo. Oct. 7, 2024) (approving $10,000 each to two named plaintiffs); *Valverde v. Xclusive Staffing, Inc.*, Nos. 16-cv-00671-RM-NRN, 17-cv-01602-RM-NRN, 2020 WL 4057585, at *2 to *3 (D. Colo. July 20, 2020) (approving $20,000 each to five class members).

[4]   The attorney fee award is 1/3 of the gross settlement fund and represents a 3.37 multiplier of counsel's lodestar fees. *See* Doc. 58 at 5-6; *Thompson*, 2018 WL 2183988, at *3 ("[A]ttorneys' fees of one-third [of the common fund] or thereabouts are generally deemed reasonable." (citing *Whittington*, 2013 WL 6022972, at *6) (approving 39% of settlement fund)); *Vaszlavik v. Storage Corp.*, No. 95-B-2525, 2000 WL 1268824, at *2 (D. Colo. Mar. 9, 2000) ("Fees . . . generally range from 20%-50% [of the common fund]."); *Mishkin v. Zynex, Inc.*, Nos. 09-cv-00780-REB-KLM, 09-cv-00816-REB-KLM, 09-cv-00829-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012) (collecting cases approving lodestar multipliers between 2.5-4.6).

## CONCLUSION

It is **ORDERED** that:

The parties' Joint Motion for Final Approval of Class and Collective Action Settlement, **Doc. 69**, is **GRANTED**;

The Court **APPROVES** the parties' Settlement and Release Agreement, Doc. 57-1, and incorporates the terms of that agreement into this Order;

The Court **CERTIFIES** a Rule 23 settlement class defined as "All Los Dos Potrillos hourly employees from January 19, 2017 through April 8, 2024." The Court finds to be class members those to whom the Rule 23(c)(2) notice was directed who have not requested exclusion, as described in the declarations of the class administrator, Docs. 69-1, 70-1;

The Court **CERTIFIES** an FLSA settlement collective defined as "All Los Dos Potrillos hourly employees from January 19, 2020 through April 8, 2024." The Court finds to be collective members those to whom the FLSA notice was directed who have returned valid and timely opt-in forms, as described in the declarations of the class administrator, Docs. 69-1, 70-1;

The Court will retain jurisdiction for enforcement of the settlement agreement; and

The Clerk of Court is **DIRECTED** to enter a final judgment and close this case.

DATED: April 25, 2025          BY THE COURT:

                               Daniel D. Domenico
                               United States District Judge